**EXHIBIT "A"**

Filed
D.C. Superior Court
10/05/2018 09:38AM
Clerk of the Court

SUPERIOR COURT
OF THE THE DISTRICT OF COLUMBIA

**AUSTIN PLUMMER**
4501 23d Parkway
Apt 104
Temple Hills, MD 20748

Plaintiff,

v.

**GOVERNMENT OF THE DISTRICT OF**
**COLUMBIA, et al.**

**SERVE:**

Mayor Muriel Bowser
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

**and**

Attorney General Karl Racine
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

**and**

**JEANETTE MYRICK,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

**and**

**SHELLY CHISHOLM,**

Civil Action No.:

1

Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

**and**

**ROBIN BROWN,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

**and**

**DENISE THOMAS,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

**and**

**KEVIN PROCTOR,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

Defendants.

## COMPLAINT FOR INDIVIDUAL MONEY DAMAGES AND JURY DEMAND

### Introduction

1.   This is an action for money damages brought by Austin Plummer for common law false imprisonment and statutory over-detention because the government of the District of Columbia (the "District") through its Department of Corrections ("DOC") and its DOC staff held him in the DC Jail after he was entitled to release.

2.   Mr. Plummer names as defendants the government of the District of Columbia and he also names as defendants the individual defendants named herein, all of whom worked in the Records Office at the Central Detention Facility (DC Jail) during all relevant times: Jeanette

Myrick, Lead Supervisory Legal Instruments Examiner, and the following four Supervisory Legal Instruments Examiners: Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor (the "Individual Defendants").

Parties

3.　　Mr. Plummer is an adult and a longtime resident of the District of Columbia area.

4.　　Defendant government of the District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

5.　　Each Individual Defendant was at all relevant times an employee of the District of Columbia DOC.

6.　　Jeanette Myrick was at all relevant times the Lead Supervisory Legal Instruments Examiner in the Records Office of the DOC.

7.　　Each of Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor was at all relevant times a Supervisory Legal Instruments Examiner in the Records Office of the DOC.

8.　　Each Individual Defendant was at all relevant times acting within the scope of their employment.

FACTUAL ALLEGATIONS

Introduction

9.　　Mr. Plummer was sentenced by a Superior Court judicial officer in a criminal case brought in the District of Columbia Superior Court to serve a determinate sentence.

10.　　Mr. Plummer was committed to the DOC to serve his sentence in the DC Jail.

11.　　DOC employees there placed Mr. Plummer in a jail cell and restrained him there.

12.　　The District's duty to release Mr. Plummer arose on his Release Date (the date on which he was legally entitled to release because the legal basis for detaining him expired).

3

13.    Mr. Plummer's Release Date was about 8/23/2017 when his sentence ended and there was no other basis to hold him.

14.    Mr. Plummer was entitled by statute to release no later than noon on his Release Date. D.C. Code § 24-211.02a(a)(3) .

15.    But, instead of releasing Mr. Plummer on 8/23/2017, the District through its DOC employees continued to hold Mr. Plummer and they restrained him without justification in the DC Jail until at least 10/6/2017.

16.    The District of Columbia Records Office is the division within the DC Jail responsible for tracking inmates and releasing them when they are entitled to release.

17.    On information and belief the cause of his over-detention, that is, being held past his Release Date, was that the one or more staff in the Records Office made a computation error in calculating his sentence.

18.    Alternatively, on information and belief, the cause of his over-detention was another error committed by one or more of the Records Office staff or some other DOC employee.

19.    In either event, the error should have been discovered by Jeanette Myrick, Lead Supervisory Legal Instruments Examiner, and/or all or one of the following four Supervisory Legal Instruments Examiners: Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor (the "Individual Defendants") whose duty it was to ensure his release from DOC custody on his Release Date.

20.    On information and belief, based on her conduct in other cases, Jeanette Myrick, Lead Supervisory Legal Instruments Examiner, knew about the error and failed to report it.

4

21.    For many years the Records Office has had a had a long and documented history of holding inmates past their release dates, that is, the date on which they were entitled to release.

22.    The Records Office has a long history of making errors such as miscalculating sentences, misplacing paperwork, and other types of errors, which cause inmates to be held past their release dates.

## Substantive Allegations

## Claim 1

## Common Law Liability of Individual Defendants for False Imprisonment

23.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

24.    Mr. Plummer was sentenced to serve at the DC Jail a determinate sentence imposed by a Superior Court judicial officer.

25.    DOC employees placed Mr. Plummer in a jail cell and restrained him there.

26.    The District's duty to release Mr. Plummer arose on 8/23/2017 when his sentence ended and there was no other basis to hold him.

27.    DOC staff including but not limited to the Individual Defendants caused his false imprisonment by failing to release him when the legal basis for his detention expired and instead that arrested and restrained him.

28.    The DOC staff effected an arrest and restrain and false imprisonment of Mr. Plummer by failing to release him when the legal basis for his detention expired.

29.    The release authorization form (form prepared by the Records Office indicating the date, time, and circumstances of release) shows that Mr. Plummer was not released until 10:40 a.m. on 10/6/2018.

5

30.    But, instead of releasing Mr. Plummer on 8/23/2017, the District through its DOC employees continued to hold Mr. Plummer and they arrested him and they restrained him without justification until at least 10:40 a.m. on 10/6/2017.

31.    As a direct and proximate result of his false imprisonment Mr. Plummer suffered general and special damages including emotional distress.

### Claim 2

**Statutory Liability of Individual Defendants for holding Mr. Plummer past his Release Date**

32.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

33.    D.C. Code § 24-211.02a(a)(3) provides that an inmate who has completed his or her sentence, and for whom there is no other outstanding charge or warrant, shall be released before noon on his or her scheduled release date.

34.    But, the Individual Defendants caused Mr. Plummer to be held past noon on his Release Date.

35.    As a direct and proximate result of their conduct holding Mr. Plummer past noon on his Release Date Mr. Plummer suffered general and special damages including emotional distress.

### Claim 3

**Supervisory Liability of Individual Defendants for false imprisonment and over-detention**

1.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

2.    As stated above, the DOC through its staff held Mr. Plummer past his Release Date.

3.     Each of the Individual Defendants had responsibility for checking the sentence calculation and other processes by which Mr. Plummer should have been released on his Release Date.

4.     Individually and collectively the Individual Defendants at some point were supervising the Records Office staff during the period of Mr. Plummer's false imprisonment and over-detention.

5.     The Individual Defendants had a duty to take steps to supervise Records Office by checking their processing of Mr. Plummer's release, but by failing to do so and by other actions and failures to act the Individual Defendants were the proximate cause of Mr. Plummer's being held past his Release Date.

6.     As a direct and proximate result of their conduct Mr. Plummer suffered general and special damages including emotional distress.

## Claim 4

### Supervisory liability of Jeanette Myrick for Mr. Plummer's false imprisonment and over-detention

7.     Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

8.     Jeanette Myrick during all relevant times was the Lead Supervisory Legal Instruments Examiner in the Records Office Records Office" at the D.C. Jail.

9.     Ms. Myrick during all relevant times supervised the Legal Instrument Examiners.

10.    Legal Instrument Examiners are the D.C. Jail employees responsible for processing release and commitment documents including release orders received from the D.C. Superior Court.

11.    Ms. Myrick during all relevant times was responsible for "oversee[ing] the day-to-day operations of the Records Office" at the D.C. Jail.

12.    Ms. Myrick is also the supervisor required "to make sure that the inmates are released" on their Release Dates.

13.    At all times relevant, Ms. Myrick knew, or reasonably should have known, that her subordinates were failing to process prisoner releases in a timely fashion.

14.    Notably, Ms. Myrick even maintained a file of "overdetention reports."

15.    Despite the known problem of overdetentions, Ms. Myrick failed to take adequate steps to prevent the overdetention of prisoners at the D.C. Jail, including Mr. Plummer.

16.    In fact, Ms. Myrick has admitted that the Department of Correction's written policy of requiring Legal Instrument Examiners to "obtain and review printouts from ... Courtview" when processing a prisoner release was not the actual practice or custom for the Legal Instrument Examiners that she supervised during all relevant times.

17.    The District's employees in the DOC responsible for restraining Mr. Plummer when his sentence expired were acting within the scope of their employment at all times.

## Claim 5

### Liability of District of Columbia in *respondeat superior* for the misconduct of its employees

18.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

19.    The actions, and failure to act, as described above, of the employees of the District, including but not limited to the Individual Defendants, were the proximate cause of Mr. Plummer's being held past his Release Date.

20.    The District's employees were acting within the scope of their employment at all relevant times.

21.    The District is liable for the conduct of its employees in *respondeat superior*.

22.    Accordingly, Mr. Jones is entitled to general and special damages to be determined at trial.

### Prayer for Relief

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1.    grant a jury trial on all claims so triable;

2.    award all Mr. Plummer general and compensatory and consequential damages in an amount to be determined at trial; and

3.    grant such other relief as this Court deems just and proper.

Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

717 D Street, N.W., Ste 300
Washington, DC 20004
202-824-0700

## Jury Demand

Plaintiffs demand a jury of six as to all claims so triable.


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Plummer

# EXHIBIT "B"

# SUPERIOR COURT
## OF THE THE DISTRICT OF COLUMBIA

**AUSTIN PLUMMER**
4501 23d Parkway
Apt 104
Temple Hills, MD 20748

Plaintiff,

    v.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA, et al.**

**SERVE:**

Mayor Muriel Bowser
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

**and**

Attorney General Karl Racine
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

**and**

**JEANETTE MYRICK,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

**and**

**SHELLY CHISHOLM,**

Civil Action No: 2018 CA 007100 B

Judge Fem Saddler
Initial Scheduling
Conference 3/8/2019

1

Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

and

**ROBIN BROWN,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

and

**DENISE THOMAS,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

and

**KEVIN PROCTOR,**
Central Detention Facility (DC Jail)
1901 D Street, SE
Washington, DC 20003

Defendants.

## FIRST AMENDED COMPLAINT FOR INDIVIDUAL MONEY DAMAGES AND JURY DEMAND

### Introduction

1.     This is an action for money damages brought by Austin Plummer for common law false imprisonment and statutory over-detention because the government of the District of Columbia (the "District") through its Department of Corrections ("DOC") and its DOC staff listed herein held him in the DC Jail past his Release Date (10:00 a.m. on the date on which he was legally entitled to release from DOC custody).

2.     Mr. Plummer names as defendants the government of the District of Columbia and he also names as defendants the individual defendants named herein, all of whom work in the

2

Records Office at the Central Detention Facility (DC Jail): Jeanette Myrick, Lead Supervisory

Legal Instruments Examiner, and the following four Supervisory Legal Instruments Examiners:

Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor (the "Individual Defendants").

## Parties

3.     Mr. Plummer is an adult and a longtime resident of the District of Columbia area.

4.     Defendant government of the District of Columbia is a municipal corporation

capable of being sued under D.C. Code § 1-102.

5.     Each Individual Defendant was at all relevant times an employee of the District of

Columbia DOC.

6.     Jeanette Myrick was at all relevant times the Lead Supervisory Legal Instruments

Examiner in the Records Office of the DOC.

7.     Each of Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor was at all

relevant times a Supervisory Legal Instruments Examiner in the Records Office of the DOC.

8.      Each Individual Defendant was at all relevant times acting within the scope of their

employment.

## FACTUAL ALLEGATIONS

### Introduction

9.     Mr. Plummer was sentenced by a Superior Court judicial officer in a criminal case

brought in the District of Columbia Superior Court to serve a determinate sentence.

10.    Mr. Plummer was committed to the DOC to serve his sentence in the DC Jail.

11.    DOC employees there placed Mr. Plummer in a jail cell and restrained him there.

12.    The District's duty to release Mr. Plummer arose on about 8/23/2017 when his

sentence ended and there was no other basis to hold him.

3

13.     Mr. Plummer was entitled by statute to release no later than 10 a.m. on his Release Date.

14.     But, instead of releasing Mr. Plummer on 8/23/2017, the District through its DOC employees continued to hold Mr. Plummer and they restrained him without justification in the DC Jail until at least 10/6/2017.

15.     The District of Columbia Records Office is the division within the DC Jail responsible for tracking inmates and releasing them when they are entitled to release.

16.     On information and belief the cause of his over-detention, that is, being held past his Release Date was that the one or more staff in the Records Office made a computation error in calculating his sentence.

17.     Alternatively, on information and belief, the cause of his over-detention was another error committed by one or more of the Records Office staff.

18.     In either event, the error should have been discovered by Jeanette Myrick, Lead Supervisory Legal Instruments Examiner, and/or all or one of the following four Supervisory Legal Instruments Examiners: Shelly Chisholm, Robin Brown, Denise Thomas, Kevin Proctor (the "Individual Defendants").

19.     On information and belief, based on her conduct in other cases, Jeanette Myrick, Lead Supervisory Legal Instruments Examiner, knew about the error and failed to report it.

20.     Therefor the District through its DOC employees falsely imprisoned Mr. Plummer for approximately 45 days by holding him after the District's duty to release him had arisen.

21.     The common law requires the DOC to release inmates when they become entitled to release.

4

22.     For many years the Records Office has had a had a long and documented history of holding inmates past their release dates, that is, the date on which they were entitled to release.

23.     The Records Office has a long history of making errors such as miscalculating sentences, misplacing paperwork, and other types of errors, which cause inmates to be held past their release dates.

24.     Once of the major causes of the District's over-detention and court return strip-search problem is that it runs a split system, that is, each system uses its own database (the Superior Court uses CourtView and the DOC uses JACCS) that cannot communicate directly over an electronic network.

25.     Compounding the problem is that the DOC sends prisoners to the courthouses from the DC Jail and CTF for hearings at which the court returns receive paper release or commitment orders, and then the DOC Records Office processes releases based on the paper orders.

26.     Although such technology exists, release and commitment orders issued by the Superior Court judicial officers do not print out in the Records Office or any other secure DOC.

27.     Instead, a "sneaker network" of DOC transport officers transmitting the orders by hand connects the two systems.

28.     Every release / commitment order issued by the Superior Court or the District Court has to be hand carried from the courtroom clerk by the courthouse Marshals to DOC staff in the courthouse who carry it back to the Records Office with the court returns on the transport vehicles to the Records Office and then re-entered manually into the DOC system.

29.     It is a fundamental premise of data management that every time data has to be re-entered into a system by hand is an opportunity for error.

5

30.    In contrast, the MPD arrest booking database communicates via network with the Superior Court booking system so data about arrestees is transmitted electronically from the MPD system to the CourtView system almost immediately.

31.    This is both quicker and more error free.

32.    Despite years of knowing about the problems caused by transmitting papers orders by hand the DOC has refused to engineer a system of electronically transmitting release / commitment data from the courthouses to the Records Office system.

33.    Every release / commitment order issued by a judge is printed out in duplicate, one copy for the court and one copy for the DOC.

34.    The District even refuses to set up a network to link the courtroom computers with the Records Office so that paper orders printed out by the courtroom clerks will print in the Records Office.

35.    Networking printers at remote locations is so simple these days that people can go online and print documents remotely at their local copy/ print center.

### DOC runs a paper system for tracking cases

36.    The DOC's Records Office maintains records for each inmate and processes their releases and commitments.

37.    The DOC runs a paper system for tracking cases.

38.    Each inmate has a paper hard copy file (their "jacket").

39.    Even though the DOC maintains an electronic inmate management system database (JACCS) each commitment and release requires a review of official hard copy documentation in an inmate's file and the review of hard copy documents provides the primary basis for making release determinations.

6

40.     The District's Records Office runs the system manually and frequently misplaces jackets, misfiles orders, and fails to process commitments and releases reliably.

41. Pursuant to the Department of Correction's policies, a Legal Instrument Examiner "must review each inmate's file to make sure that all releasing documents match the case and identify any other pending cases and/or detainers on file," which requires also "search[ing] Courtview to check for other cases holding the inmate in custody."

42.     As a result of this system Records Office staff lack documents or online information or refuse to view online dockets such as the successor to CourtView and to Pacer and so make calculation error and other types of errors because they have access to but do not access data needed to make sentence calculations.

43.     Also, in this day and age when people can email their documents to a central server or to the local FedEx for printing nothing prevented the District years ago from installing secure printers in the R&D post (where inmates are received and discharged to the DC Jail and other DOC facilities) and the Records Office of the DOC where release orders from the courthouses could have been printed out.

44.     These practices and procedures also contribute to errors in sentence calculation, especially in calculating sentences when an inmate as good time credit or credit for time-served.

45.     The Department of Corrections has no workable method ensuring that the Records Office accurately calculates sentences and it has no method of ensuring that the Records Office corrects sentence miscalculations when they occur.

46.     Instead, Records Office staff and supervisors such as Ms. Myreck deny the errors and leave persons suffering over-detentions in confinement.

7

**District's deliberate indifference to and acquiescence in the longstanding practice of over-detentions.**

47.     The DOC still has a custom and practice of over-detentions.

48. Recently Judge Sullivan of the District Court of the District of Columbia ordered (Court's April 25, 2018 Minute Order) the District of Columbia Department of Corrections (DOC) "to explain in writing the circumstances surrounding the release of [a certain] Mr. Harris" on April 24, 2018.

49. Ultimately as part of the report the DOC filed a report by an outside consultant, the Moss Group ("TMG") referred to herein as the "Moss Report".

50. The Moss Report addressed both "erroneous releases" (an inmate is released before their Release Date) and "over-detentions" (an inmate is released after their Release Date) because both types of release errors are flip sides of the same "untimely release" coin and both types of release errors signify that the Records Office cannot reliably process inmate releases.

51. The Moss Report stated that during the period from January 1, 2015 until the date of the Moss Report (October 2018) the DOC/ Records Office reported a total of 20 untimely releases: fourteen delayed releases and six early releases over the approximately 3 ½ year period.

52. but, the Moss Report also found that discrepancies in the various reports made by the Records Office "... call[ed] into question the integrity of the data contained within the reports examined and further emphasizes the need for a unified and streamlined approach to tracking and reporting untimely releases."

53. During the period of the TMG review (of several months), DC DOC identified and reported to TMG 5 additional untimely releases, all of which appear to be directly related to records' office staff error.

8

54. Moreover, in the month of December plaintiffs' counsel was contacted by two other former inmates of the District of Columbia who were over-detained in the past six months, one for about 60 days and one for about 10 days.

55. On information and belief based on informal discussions with knowledgeable persons the total is actually much higher during the period from 2015 to the present.

56. Discovery litigation in the Smith case referenced above also found that the DOC was hiding and under-reporting over-detentions.

57. The DOC has a history of under-reporting over-detentions of which the D.C. Council is aware.

## Substantive Allegations

## Claim 1

## Common Law Liability of Individual Defendants for False Imprisonment

58.     Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

59.     Mr. Plummer was sentenced to serve at the DC Jail a determinate sentence imposed by a Superior Court judicial officer.

60.     DOC employees placed Mr. Plummer in a jail cell and restrained him there.

61.     The District's duty to release Mr. Plummer arose on 8/23/2017 when his sentence ended and there was no other basis to hold him.

62.     DOC staff including but not limited to the Individual Defendants caused his false imprisonment by failing to release him when the legal basis for his detention expired and instead that arrested and restrained him.

9

63.     The DOC staff effected an arrest and restrain and false imprisonment of Mr. Plummer by failing to release him when the legal basis for his detention expired.

64.     The release authorization form (form prepared by the Records Office indicating the date, time, and circumstances of release) shows that Mr. Plummer was not released until 10:40 a.m. on 10/6/2018.

65.     But, instead of releasing Mr. Plummer on 8/23/2017, the District through its DOC employees continued to hold Mr. Plummer and they arrested him and they restrained him without justification until at least 10:40 a.m. on 10/6/2017.

66.     As a direct and proximate result of his false imprisonment Mr. Plummer suffered general and special damages including emotional distress.

## Claim 3

### Supervisory Liability of Individual Defendants for false imprisonment and over-detention

67.     Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

68.     As stated above, the DOC through its staff held Mr. Plummer past his Release Date.

69.     Each of the Individual Defendants had responsibility for checking the sentence calculation and other processes by which Mr. Plummer should have been released on his rdt.

70.     Individually and collectively the Individual Defendants at some point were supervising the Records Office staff during the period of Mr. Plummer's false imprisonment and over-detention.

71.     As a direct and proximate result of their conduct Mr. Plummer suffered general and special damages including emotional distress.

## Claim 4

## Supervisory Liability of Jeannette Myrick for Mr. Plummer's false imprisonment and over-detention

72.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

73.    Jeanette Myrick during all relevant times was the Lead Supervisory Legal Instruments Examiner in the Records Office Records Office" at the D.C. Jail.

74.    Ms. Myrick during all relevant times supervised the Legal Instrument Examiners.

75.    Legal Instrument Examiners are the D.C. Jail employees responsible for processing release and commitment documents including release orders received from the D.C. Superior Court.

76.    Ms. Myrick during all relevant times was responsible for "oversee[ing] the day-to-day operations of the Records Office" at the D.C. Jail.

77.    Ms. Myrick is also the supervisor required "to make sure that the inmates are released" on their Release Dates.

78.    At all times relevant, Ms. Myrick knew, or reasonably should have known, that her subordinates were failing to process prisoner releases in a timely fashion.

79.    Notably, Ms. Myrick even maintained a file of "overdetention reports."

80.     Despite the known problem of overdetentions, Ms. Myrick failed to take adequate steps to prevent the overdetention of prisoners at the D.C. Jail, including Mr. Plummer.

81.    In fact, Ms. Myrick has admitted that the Department of Correction's written policy of requiring Legal Instrument Examiners to "obtain and review printouts from ... Courtview" when

11

processing a prisoner release was not the actual practice or custom for the Legal Instrument Examiners that she supervised during all relevant times.

82.    The District's employees in the DOC responsible for restraining Mr. Plummer when his sentence expired were acting within the scope of their employment at all times.

## Claim 5

### Liability of District of Columbia in *respondeat superior* for the misconduct of its employees

83.    Mr. Plummer realleges and incorporates by reference all allegations set forth in this Complaint.

84.    The actions, and failure to act, as described above, of the employees of the District, including but not limited to the Individual Defendants, were the proximate cause of Mr. Plummer's being held past his Release Date.

85.    The District's employees were acting within the scope of their employment at all relevant times.

86.    The District is liable for the conduct of its employees in *respondeat superior*.

87.    Accordingly, Mr. Plummer is entitled to general and special damages to be determined at trial.

## Claim 6

### § 1983 Liability of District of Columbia for Overdetentions

88. Mr. Plummer realleges and incorporates by reference all allegations set forth in this Amended Complaint.

89. The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining inmates past their release dates for the reasons stated above, thereby causing unjustified overdetentions of Mr. Plummer and other inmates in the DOC's facilities.

90. The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of t Mr. Plummer and other inmates in the DOC's facilities' Fifth Amendment rights.

91. The District is liable for the overdetention problems at the DOC that caused Mr. Plummer's over-detention because they were caused by the District's deliberate indifference to inmates' 5th Amendment rights to be released on their Release Dates. The "moving force" behind the constitutional deprivations associated with plaintiffs' overdetentions was the District's deliberate indifference.

92. However, as a separate basis for Section 1983 liability, alternatively, the overdetention problem is the result of official acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the District through the DOC. alternatively, the "moving force" behind the constitutional deprivations associated with plaintiffs' overdetentions was the result of official acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the District through the DOC.

93. Accordingly, Mr. Plummer is entitled to damages to be determined at trial.

## Prayer for Relief

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1.      grant a jury trial on all claims so triable;

2.      award all Mr. Plummer general and compensatory and consequential damages in an amount to be determined at trial; and

13

3.      grant such other relief as this Court deems just and proper including an award of attorneys' fees under 42 U.S.C.A. § 1988.

Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

717 D Street, N.W., Ste 300
Washington, DC 20004
202-824-0700


**Jury Demand**

Plaintiffs demand a jury of six as to all claims so triable.


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Plummer

14